**OPP**
Heidi Duffy
213 Night Fall Terrace
Henderson, Nevada 89015
(702) 768-3101

**UNITED STATES DISTRICT COURT**

**DISTRICT OF NEVADA**

| | |
|---|---|
| Heidi Duffy, | ) Case No.: **2:09-cv-1780-JCM-GWF** |
| Plaintiff, | ) |
| vs. | ) **OPPOSITION TO DEFENDANT** |
| | ) **MORTGAGEIT'S MOTION TO DISMISS** |
| OneWest Bank as successor-in-interest; | ) |
| Trustee Corps; MortgageIT; Does 1 through | ) |
| 100, inclusive, | ) Date: _____ |
| | ) |
| Defendants. | ) Time: _____ |

COMES NOW Heidi Duffy, Plaintiff herein, and hereby opposes the Motion to Dismiss filed by Defendant MORTGAGEIT.

This Opposition is made and based on the Memorandum of Points and Authorities contained herein, all the papers and pleadings on file, and any oral argument heard at the time of the hearing on this matter.

Dated this 29th day of September, 2009.

Heidi Duffy, Plaintiff in proper person
213 Night Fall Terrace
Henderson, Nevada 89015
(702) 768-3101

1

## MEMORANDUM OF POINTS AND AUTHORITIES

On or about October 16, 2006, Plaintiff applied for a mortgage loan from Defendant MorgageIT ("Defendant"). The loan purported to be a conventional mortgage loan, as there was nothing in the loan documents stating that Plaintiff's signature, identity, or payments would all be used to create a security instrument, commonly known as a "mortgage-backed security" wherein the terms and payment streams are substantially different than those represented by MortgageIT.

Plaintiff has made her mortgage payments faithfully over the years, but recently started learning of the true nature of what "mortgage loans" have become and why the economic results of these new loans are so disastrous.

Counsel for Defendant attempts to discredit nearly every statement of the Plaintiff, including such claims as "Plaintiff has not alleged any factual basis as to what a securities transaction is" and other similar statements. As an attorney for MortgageIT, Plaintiff simply assumed that such learned counsel would understand what this lender has been doing for years over what must be thousands of mortgages.

A 2005 corporate news release reveals an example of MortgageIT's typical business model concerning mortgage loans:

**MortgageIT Holdings completes securitization.**

MortgageIT Holdings, Inc., a residential mortgage real estate investment trust (REIT), announced the completion of its second loan securitization of 2005 and fourth overall, a public offering of approximately $665.4 million in aggregate principal amount of notes backed by residential, first-lien adjustable rate mortgage (ARM) and hybrid ARM loans, through MortgageIT Trust 2005-2.

Credit Suisse First Boston served as lead underwriter and Merrill Lynch and UBS served as the co-managers of the transaction. Proceeds from the offering will be used to provide long-term financing of mortgage loans originated by MortgageIT Holdings' taxable REIT subsidiary.

"With today's transaction, we have successfully securitized more than $3 billion in self-originated residential mortgage loans in less than nine months following our initial public offering," commented Doug Naidus, Chairman and Chief Executive Officer of MortgageIT Holdings.

Source: http://www.thefreelibrary.com/Mortgage+IT+Holdings+completes+securitization-a0133409714

It is not clear whether counsel for Defendant is either making it appear that they do not know how a securitized loan operates, or that they sincerely do not know; therefore, Plaintiff will quote the simple yet eloquent description found in *Greenwich Financial, et al. v. Countrywide*, a lawsuit filed by secondary-market investors of mortgage-backed securities. The case is No. 08-11343 in the U.S. District Court, Southern District of New York (Manhattan) (remanded back to state court), and the following is from the complaint:

> "Countrywide makes mortgage loans. To raise money to lend, Countrywide securitized some of its loans. When loans are securitized, they are sold to a trust. When borrowers then pay interest and principal on their mortgage loans, those payments go to the trust, rather than to the lender that made the mortgage loans initially but then sold them to the trust.
>
> To raise the money to pay for the loans, the trust sells certificates to investors. (These certificates are securities, hence the term "securitization.") Each certificate entitles its owner to payment of the principal, or face, amount of the certificate, plus interest at an agreed rate until the principal is paid.
>
> Certificates are divided into classes, or tranches. The certificates in different classes give their owners different claims on the cash that is flowing into the trust from payments of interest and principal on the mortgage loans that the trust owns.
>
> In addition to the mortgage lender, the trust, and the investors in the certificates, there are other participants in a securitization. One is the master servicer, which administers the mortgage loans on behalf of the certificateholders."

Even though the above statements regard Countrywide, the chain of events described for securitizing a loan are virtually identical for any lender who securitized their loans.

Further, as a result of securitizing loans and selling the payment streams from the *notes only* to the secondary-market investors, the participants in the transaction have effectually separated the mortgage from the note.

An explanation of the ramifications of a note/loan separated from the mortgage is found in the recent Kansas Supreme Court decision of *Landmark National Bank v. Boyd A. Kesler*, case no. 98,489:

"Indeed, in the event that a mortgage loan somehow separates interests of the note and the deed of trust, with the deed of trust lying with some independent entity, the mortgage may become unenforceable.

"The practical effect of splitting the deed of trust from the promissory note is to make it impossible for the holder of the note to foreclose, unless the holder of the deed of trust is the agent of the holder of the note. [Citation omitted.] Without the agency relationship, the person holding only the note lacks the power to foreclose in the event of default. The person holding only the deed of trust will never experience default because only the holder of the note is entitled to payment of the underlying obligation. [Citation omitted.] The mortgage loan becomes ineffectual when the note holder did not also hold the deed of trust." *Bellistri v. Ocwen Loan Servicing, LLC*, 284 S.W.3d 619, 623 (Mo. App. 2009).

Plaintiff has further discovered the common use of insurance guarantees, such as "credit default swaps" taken by the participants in the securitization of mortgage loans, including hers. Plaintiff contends that this practice is improper and unethical, in that it actually encourages lenders to create conditions wherein their borrowers fall into default, and would be akin to someone purchasing fire insurance on their neighbor's house, quickly realizing that they stand to make a profit if their neighbor's house burnt down.

Plaintiff learned of the nature of these "credit default swaps" ("CDS") while attempting to "modify" her loan, but finding it very difficult to do so. At one point, she was told that the loan could not be modified "because she was current on the payments." At first, this made no sense, but now, understanding that lenders stand to gain much more, and gain it more quickly, if a borrower defaults, it has become clear why her lender/servicer continually sent the same blank documents which she continually filled out, only to be given a continuing excuse as to why her loan could not be "modified."

In fact, in the same *Greenwich* complaint, it is revealed that lenders who securitized their loans no longer had the authority to modify that which had been promised contractually to other parties. The payments from the loans placed into securities are governed by the Pooling and Servicing Agreements, which usually state that to "modify" any one particular loan, the lender, or "seller" must purchase that loan out for the entire amount of unpaid principal. Since many of the loans put into these "mortgage-backed security instruments" were interest-only,

4

pay-option, negative amortization, or other toxic loan product, the "entire amount of unpaid principal" was usually the full amount of the loan, or even more. Most lenders could easily see that, for example, between (a) paying $309,000 to give Plaintiff a better payment, or (b) never modifying the loan so that they could foreclose and also collect the CDS insurance – sometimes as high as thirty times the value of the note – the choice was obvious. Plaintiff never was offered a reasonable modification of her loan, and she believes she now understands why.

Defendant has most likely, besides being paid in full upon the "sale" of the Plaintiff's note/loan, also collected additional amounts from insurance, overcollateralization, cross-collateralization, CDS, government bailouts, and other methods used to profit from the misery that these predatory lending tactics have caused borrowers who were simply looking for a conventional mortgage loan to buy their American Dream – a home. Defendant MortgageIT, like so many other lenders throughout the country, have destroyed that dream.

From these examples, we can see that securitizing loans, while providing more immediate and greater profits for the lenders, changed the entire picture that was normally presented to the borrowers.

Plaintiff's claims as described in her Complaint stem from the *securitization* of her loan, and the addition of terms, parties, payment streams, insurance, and other matters, all of which were not disclosed to her, and all of which substantially change the nature of the transaction, which Defendant MortgageIT represented would be simply a "mortgage loan."

Nowhere in the loan documents did MortgageIT reveal to Plaintiff:

(1)    That MortgageIT may not have been the actual source of the funds for Plaintiff's loan;

(2)    That MortgageIT would separate the mortgage from the note when it "sold" its interest in the note through the securitization process;

(3)    That the mortgage would be paid in full upon MortgageIT's sale of the note;

(4)    That both the mortgage and the note would be unenforceable upon the separation of the two when the note was sold and/or securitized;

(5)     That Plaintiff's payments would not pay her mortgage, but instead would be paid to the servicer(s) and any investors of the mortgage-backed security which held her note;

(6)     That it would be impossible for Plaintiff's payments to pay off her mortgage in this fashion,

(7)     That, under these circumstances, Plaintiff could not be in "default" to any party;

(8)     That MortgageIT, as part of the sale/securitization of Plaintiff's note, would purchase credit default swap insurance and/or other guarantees, and stood to gain more if Plaintiff defaulted than if she remained current; and

(9)     That, in the event of an alleged "default" claimed by the lender or servicer, any foreclosure action by any parties would be without the full and proper authority necessary due to the nature of the note having been separated from the mortgage.

Counsel for Defendant attempts to prove, in several places in the Motion to Dismiss, that simply because Plaintiff signed or received "disclosure" documents from MortgageIT, that MortgageIT fulfilled its obligations of full disclosure. Nothing could be further from the truth. Just because Plaintiff signed or received these loan disclosures, this does not guarantee the accuracy or truthfulness of the documents, it only means that Plaintiff received them.

These claims by the Plaintiff are in addition to the fact that the original promissory note is most likely unavailable from any of the parties. The most common answers are that it was "lost" "stolen" or "destroyed," and it is also common that attorneys representing foreclosing lenders find some case law that seems to claim that the original note is not needed.

However, many judges are dismissing cases by lenders and their "nominees" from foreclosure and bankruptcy proceedings because of the absence of possession of the original note. See cases 07-CV-1007 et al. (dismissing 32 foreclosures), and cases 07-CV-2282 et al. (dismissing 14 foreclosures), all because the foreclosing party was not in possession of the original note. If it were permissible for a foreclosing entity to foreclose without the note, there would be no way to guarantee that other creditors claiming to be "holders" of the note would not appear at some future time.

The key factors of Plaintiff's case are: (1) the separation of the note from the mortgage; (2) unrecorded assignments and transfers; (3) Defendant MortgageIT's securitization of the note; (4) improperly applied mortgage payments; and (5) undisclosed terms and parties.

Counsel for Defendant throughout their Motion continually aver that Plaintiff has "failed to identify any wrongdoing" by their client, MortgageIT.   However, Plaintiff did attempt to ascertain information through Qualified Written Requests which could lead to positive proof of her allegations, but has only received standard, non-specific denials to very specific questions and requests.   One QWR is attached to Plaintiff's Complaint.   Plaintiff submits that MortgageIT, and most likely any other lender and/or servicer, will answer such written requests in the same manner, since all parties seem to want to make it as difficult as possible for an innocent borrower to find the truth about what happened to their mortgage loan. Even in the instant case, counsel for Defendant attempts to make MortgageIT look quite pristine, while borrowers and former homeowners are made homeless by shameless executives with an insatiable greed.   Fortunately for Plaintiff, and whoever else "dares" take on these lenders, the shameless and insatiable greed was accompanied by illegal, actionable and sanctionable acts.

Counsel for Defendant also raises the issue that Plaintiff's pro se status is suspect, and she should not be given the latitude normally afforded pro se plaintiffs.  Counsel bases this on the allegation that Plaintiff "appears to have been aided in the preparation of the Complaint by other that are legally trained" (Motion to Dismiss, p. 7).  Interestingly enough, counsel makes this claim while at the same time claiming that Plaintiff's complaint is "likely a form document obtained online for a few dollars" (Motion to Dismiss, p. 3).

If Defendant wishes Plaintiff to be held to the same standards as Defendant and its counsel, Plaintiff points out that her Complaint is signed, notarized, and verified.   The allegations made by counsel for Defendant are neither notarized nor verified.  If these attorneys wish to add the penalties of perjury – over and above the already-standing rules prohibiting professional misconduct – by verifying under oath that their statements are true, Plaintiff has no objection.

7

Plaintiff notes the following allegations by counsel for Defendant:

"Plaintiff has not tendered the undisputed amount…" (Motion to Dismiss, p. 4)

"Plaintiff intentionally misrepresents her knowledge and understanding of real estate transactions to this Court." (Motion to Dismiss, p. 5)

"Plaintiff is well-versed in mortgage transactions…." (Motion to Dismiss, p. 5)

"Plaintiff has no standing to bring claims…because she failed to tender payments when due." (Motion to Dismiss, p. 11)

"Plaintiff defaulted on payments concerning the subject property…." (Motion to Dismiss, p. 12)

Plaintiff believes that when it is proven that her loan note payments went to parties who could not and did not apply those payments to her mortgage (because of the nature of the securitized mortgage loan that she was induced to sign under false pretenses), it will also be proven that (1) there can be no default; (2) there are no payments due these undisclosed third parties; and (3) no "undisputed" amounts exist that can be unpaid.

Plaintiff also contends that it will be extremely difficult for counsel to prove that Plaintiff "intentionally misrepresented her understanding of real estate transactions" since, as they so often allege in their own Motion, they do not show what a real estate transaction is. Perhaps a "real estate transaction" nowadays means that a borrower will be paying investors on Wall Street for thirty years while their mortgage has been paid in full since the first payment. The problem with that picture is that it is not disclosed to the borrower.

Therefore, Plaintiff will offer this one opportunity to Defendant and its counsel to withdraw and retract any or all of the above statements, or to make the same statements verified under oath by notary. Failure to do so will give rise for Plaintiff to seek sanctions.

Conspicuously absent from the entire 25-page Motion to Dismiss is any indication that MortgageIT did not securitize the loan, though Defendant admits that it "sold the note on the subject property in January, 2007" (Motion to Dismiss, p. 10). The bulk of the remainder of the Defendant's Motion centers around grounds for dismissal based on federal cases and statutes. Plaintiff would remind the Court that her Complaint was filed in state court and

contained no claims for relief contingent upon federal laws.  Defendant MortgageIT quickly filed a Notice of Removal, and then, even more quickly, filed its Motion to Dismiss.  One would have to wonder if the sole reason to remove the case to federal court was to invoke federal claims for dismissal in an attempt to "blind-side" a pro se litigant by presenting "cookie cutter" defenses of claims she did not even make.

Plaintiff's claims for Fraud, Misrerpresentation, Negligence, Breach, and all her other claims are not contingent upon federal laws.  However, with the case now proceeding in federal court, Plaintiff will seek leave to amend to add more claims under the federal consumer protection acts which Defendant mentions so frequently in its Motion.

Plaintiff contends that her action is an attempt to bring to light the truth about her loan.  Her claims are made in good faith that if the facts as alleged are revealed in the legal process of discovery during this case, it will become obvious that this loan was not, in any reasonable terms, a "conventional mortgage loan" but was, in fact, a "disguised securities transaction" designed to profit the participants far beyond what was represented to the borrower-Plaintiff.

In fact, Plaintiff notes that Defendant makes the claim, regarding mortgage transactions that are securitized, that "as a matter of law such transactions do not violate SEC rules and regulations."  Plaintiff finds it rather difficult to believe that a securities transaction, from which the entire stream of funds come from a party who has been kept in the dark regarding all of the terms, fees, payments or parties, or even that it was a securities transaction at all, would not be highly suspect when scrutinized under existing SEC rules.  Perhaps in this case we will get a chance to see such an examination of the whole process utilized by these defendant-lenders to create securities which promise borrowers' payments to parties unbeknown to them.

### STANDARD ON MOTION TO DISMISS PURSUANT TO FRCP 12(b)(6)

Counsel for Defendant reminds us that "on a motion to dismiss, the court must accept the well-pleaded factual allegations of the complaint as true, and reasonable inferences must be drawn in the plaintiff's favor."  In the next breath, however, they claim that "there is no cognizable legal theory upon which Plaintiff's can prevail on any claim against MortgageIT."

Contrary to the above assertions, Plaintiff's Complaint mentions in numerous places the

nature and basis of the claims, both in the General Background, and in the Claims themselves, and the nature and basis always revolve around the **securitization** of the Note, including the misrepresentations and omissions connected to the **securitization**.  Plaintiff contends that there is no possible way counsel for Defendant did not read the words regarding **"securitization"** or the allegations that there are an undisclosed number of unknown parties who are indispensable to the transaction in Plaintiff's Complaint; therefore, Plaintiff asserts that counsel for Defendant is *knowingly* subverting and obfuscating the truth by omitting the fact that <u>when Defendant MortgageIT transferred its interest in Plaintiff's Note, upon sale of the newly-created security instrument, the terms of payment changed</u>.  *This* is the "cognizable legal theory" which counsel for Defendant attempts to keep out of the light, but which is an essential part of Plaintiff's case against MortgageIT and *must* come into the light.  Therefore, Plaintiff's Complaint should not be dismissed upon the misrepresentations or omissions of this Defendant.

### 1.    Breach of Contract

Counsel for Defendant alleges that Plaintiff "fails to plead the elements of the claim" with "enough facts to state a claim to relief that is plausible on its face."  Of course, Defendant fails to point out that, once **securitization** happened involving Plaintiff's Note – when undisclosed parties and undisclosed terms were brought in, to which Plaintiff became an unknown and unwilling party – the so-called "mortgage loan" – which was, in fact, a disguised **securities** transaction with unlawfully participating parties who made unreported and untaxed income from the deal – was certainly breached, in that it became a totally different "agreement" with different terms and different parties, <u>all of which would have been enough to deter Plaintiff from signing, had she known the full truth at the time of closing</u>.  Defendant not only breached the contract, but even <u>knew in advance</u> that it was going to breach, as per its pattern of **securitizing** and selling enormous amounts of its mortgage loans, and therefore, came into the agreement with unclean hands.  Of course, Defendant did not, at any time, disclose this pattern to the borrower, and Plaintiff contends that such lack of full disclosure, as well as the unclean hands of the Defendant, is ample grounds for a claim of breach of contract.

Since, by its pattern of conducting business as described previously herein, Defendant essentially breached the contract <u>the moment it was signed by Plaintiff</u>, it was, therefore, <u>Defendant who breached first</u> and the Plaintiff who suffered damages from the said breach.

The claims made by counsel for Defendant all rely on the hope that discovery will not take place. Plaintiff has made a good faith effort to discover exactly when her note was securitized, who the parties were, what the terms are, and where her note is currently, but requests to ascertain this information are continually refused, making it impossible to have the "specificity" Defendant claims is necessary for any lawsuit to go forward. Plaintiff responds by saying the judicial forum is the only remedy left for defrauded borrowers when lenders such as MortgageIT will not provide the information willingly, even when lawfully requested.

Further, if Plaintiff already knew all the particulars regarding how her mortgage payments are handled, but which are routinely concealed as "confidential," "trade secrets," or "proprietary," there would be no need for discovery or this judicial process, and she would be filing criminal complaints instead.

As for the "when, where and how" of the breach, all one has to do is include the fact of securitization of the note, and it can be demonstrated that the breach was immediate; at the point and location that the loan documents were signed; and by lack of full disclosure. The actual damages caused are roughly equivalent to the total amount of the principal on the note, plus all the interest, plus the down payment, plus closing costs, plus appraisal fees, plus any other payments made into what Plaintiff believed was her mortgage, but what in fact is a glorified Ponzi scheme designed to unjustly enrich unscrupulous parties at her expense.

Moreover, Plaintiff contends that, upon information and belief, it is possible that MortgageIT was never the true source of the funds for the loan, and in fact, was operating as a "front" for an undisclosed party who was the source of the funds, for a fee, ostensibly 2.5%, also in breach of the said contract. In doing so, MortgageIT would have violated numerous laws and regulations regulating the activities of licensed lending institutions. Therefore, until it is proven that MortgageIT was the actual source of the funds for Plaintiff's loan, Plaintiff requests that this Court allow the case to proceed and discovery to take place to determine

whether counsel's unverified statements may be taken as fact or not.

In any event, it can be seen that Defendant MortgageIT breached the contract first, and it is therefore moot whether Plaintiff stopped making her payments, or how long she has lived in the subject property.  Once Plaintiff discovered that her loan was securitized, and that her payments are not paying her mortgage, but instead, are lining the pockets of unknown secondary-market securities investors, Plaintiff has raised sufficient question as to a claim for breach of contract.

As this Defendant clearly breached any reasonable interpretation of the so-called "mortgage loan agreement," Defendant's Motion to Dismiss this claim should be denied.

## 2.      Breach of Covenant of Good Faith and Fair Dealing

Similarly to Plaintiff's claim for Breach of Contract, Plaintiff claims that MortgageIT knew they would securitize her note, and indeed, did so immediately following Plaintiff signing the loan documents.  The covenant of Good Faith and Fair Dealing was breached as soon as this Defendant changed what Plaintiff was led to believe was a standard mortgage loan, and created an unregulated securities instrument which contained her loan, and a promise of Plaintiff's payments to undisclosed third parties who would not pay off her mortgage.

What MortgageIT did is completely foreign to "selling" a note whole, where a new "owner" of the note actually holds both the note and mortgage, and thus, a borrower's payments can pay off the mortgage in the normal course.  By creating a securities instrument which contained Plaintiff's note, or the promise of the payments thereon, the note was separated from the mortgage, and Plaintiff's payments could not possibly pay off the mortgage by also paying the investors' certificates (shares) of the security instrument.  The investors never owned Plaintiff's mortgage.

Plaintiff believes that it is quite clear that these allegations cover the period from before the Note was signed, until a period of time subsequent, when it became clear that the loan "was inappropriate" and that she was "misled by Defendant regarding the nature of the transaction." Obviously, the covenant of Good Faith and Fair Dealing relates to a point before the agreement, when representations are made, and continues into the term of the agreement, when

1    it is found that the breach occurred.

2         Due to key material non-disclosures by MortgageIT, it was only <u>after</u> the mortgage note

3    was signed that Plaintiff found out the truth about the Note becoming part of an unregulated

4    **security** instrument which had significant repercussions on the entire transaction and on the

5    mortgage itself.  The fact that Plaintiff discovered the breach at a later time than when the

6    breach actually occurred is irrelevant.  The breach did occur sometime after October, 2006.

7         Seeing as how Defendant not only participated in the **securitization** process without

8    the knowledge or permission of Plaintiff, and in fact, <u>intended to do so even before the note</u>

9    <u>was signed</u>, this would certainly constitute a breach of any Good Faith or Fair Dealing on the

10   part of the Defendant....unless, of course, it was never discovered, as Defendant and its

11   counsel would prefer.  As for the "actual or proximate cause of harm or damage," Plaintiff

12   submits that it is precisely predatory practices such as this which have resulted in millions of

13   families losing their homes to foreclosure when no foreclosure should have been permitted.

14        Apparently, all parties acknowledge that "MortgageIT transferred the note to MERS"

15   but Plaintiff regards MERS' involvement as highly suspect.  MERS was created by the same

16   parties responsible for what we now call the "mortgage meltdown" and it is argued that when

17   MERS acts as "nominee" for its failed counterparts (Fannie Mae, Freddie Mac, etc.) and other

18   lenders, it electronically sidesteps the lawful recordation process required by law as part of the

19   proper chain of title.   By doing this, MERS helps conceal the full chain of title and

20   assignments, while at the same time cheating state and county governments out of millions of

21   dollars in transfer taxes that would otherwise have been paid had the documents been properly

22   recorded.  It has also been said that MERS usually lacks a properly executed power of attorney

23   to officially represent the lenders that use its "services."

24        But aside from their participation in helping destroy millions of families in America,

25   while ruining the economies of every state of the union, we have very revealing "landmark"

26   case rulings regarding MERS.  In *Mortgage Elec. Reg. Sys. v. Nebraska Dept. of Banking*, 270

27   Neb. 529, MERS had appealed the lower court's ruling that it was a "mortgage banker" under

28   Nebraska Revised Statute 45-702 and therefore subject to the license and registration

requirements of that state.  The appellate court reversed the lower court's ruling, but in the written opinion of the court, MERS got more than it bargained for, as it was confirmed:

> "But, simply stated, MERS has no independent right to collect on any debt because MERS itself has not extended credit, and none of the mortgage debtors owe MERS any money. Based on the foregoing, we conclude that MERS does not acquire mortgage loans, as defined in 45-702(8)...."

A further, more damaging ruling came recently from the United States Bankruptcy Court here in Las Vegas by Judge Linda B. Reigle, which was reported in the Las Vegas Business Press on May 18, 2009 by Tim O'Reilly as follows: "After a rare hearing in front of three judges last year that initially encompassed 27 cases, U.S. Bankruptcy Court Judge Linda Riegle has ruled that the Mortgage Electronic Registration System (MERS) could not represent lenders seeking to foreclose on delinquent homeowners already in bankruptcy unless it could produce the actual loan note."  One must wonder, at this point, what exactly transpired when "MortgageIT 'transferred' the note to MERS."

Since it was MortgageIT who made material representations about their loans which have now been proven to be deceptions, and through their intention to carry these unconscionable "loans" through to their completion – which is usually the point where families are ruined and homes destroyed – then MortgageIT has not shown one iota of Good Faith and Fair Dealing, but instead, has indeed shown a desire to profit from the misery it creates through its deceptive trade practices.  MortgageIT breached this covenant in numerous ways against Plaintiff, and Defendant's Motion to Dismiss this claim should be denied pursuant thereto.

### 3.   Negligence

Counsel for Defendant makes the claim that "as a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money."

First off, regarding Defendant's claims that as a lender, "they owe no duty of care to the borrower," Plaintiff submits the following section of the Home Ownership Equity Protection Act ("HOEPA"), 15 USC § 1639:

**(h) Prohibition on extending credit without regard to payment ability of consumer**

A creditor shall not engage in a pattern or practice of extending credit to consumers under mortgages referred to in section 1602 (aa) of this title based on the consumers' collateral without regard to the consumers' repayment ability, including the consumers' current and expected income, current obligations, and employment.        *[emphasis added.]*

Plaintiff notes that TILA and RESPA contain similar sections which are included for the protection of the borrower against making uninformed decisions, and place the <u>lender</u> at risk for violation of the sections, not the borrower.   Additionally, NRS 52 contains the elements of Assembly Bill 284 which specifically prohibits a lender from making a loan without determining that the borrower has the ability to repay the loan.   It would appear that here, counsel for Defendant has misrepresented the law.

But beyond the simple fact that the laws are unambiguous in their general protective harmony in favor of borrowers, Plaintiff was abundantly clear in her filed Complaint that it was the <u>failure of Defendant to keep Plaintiff informed</u> as to transfers of the interest in her Note; the <u>failure of Defendant to name all pertinent parties</u> who took part in the **securitization** of Plaintiff's Note; and especially, the <u>failure of the Defendant to properly credit Plaintiff's account</u> when it sold its interest in Plaintiff's Note, <u>which is when the **mortgage** was satisfied and separated from the **Note**</u>.   The mere fact that Plaintiff was never informed that her "loan" was instead a securities transaction is negligence in and of itself.

Plaintiff also alleges negligence on the part of the Defendant if and when it received government bailouts as payment and did not inform Plaintiff of the fact; or if/when it benefited from credit default swaps that constituted payment; or other insurance guarantees that may have been paid as well.   Plaintiff contends that each act could constitute negligence on the part of the Defendant, as each would constitute a form of profit from the disadvantage of Plaintiff without Plaintiff's knowledge or permission.

Plaintiff contends that (1) Defendant MortgageIT has indeed been paid in full for Plaintiff's Promissory Note <u>at least once</u>, and possibly multiple times; (2) there is no default;

15

and (3) Defendant through its counsel commits a fraud upon this Court and upon Plaintiff by representing otherwise.

Plaintiff claims and asserts that, because MortgageIT engaged in the process of creating new, unregulated **security** instruments by pooling notes or portions of notes, and then actively participated and profited from the selling of these instruments to a secondary market of investors in **securities**, MortgageIT's involvement in the loan transaction, therefore, did most definitely exceed the scope of its conventional role as a mere lender of money, and since it clearly participated in the financed enterprise far beyond the domain of the usual money lender, this Defendant owed more than the usual lender's duty of care to the borrower, but was grossly negligent in its obligations.

Counsel for Defendant has misstated both the law and the facts on this matter, and for that reason, its claim for dismissal should be denied.

### 4.      Fraud/Misrepresentation

Counsel for Defendant alleges that Plaintiff's claims fall short of the Ninth Circuit's rules for particularity.  Of course, this Complaint did not originate in the Ninth Circuit, but in the Eighth Judicial District Court of Nevada.  Plaintiff contends that if her Complaint, filed in state court, must meet the federal standards because Defendants quickly removed it, and then, even more quickly, filed this Motion to Dismiss based on rules from a different jurisdiction from that where the original Complaint was filed, then Plaintiff asserts that this is the primary reason the attorneys for MortgageIT removed the case, and that it has little to do with the fact that the amount in question exceeds $75,000.00, or that a matter of "federal question jurisdiction" exists.

That said, subsequent to the resolution of Defendant's Motion to Dismiss, Plaintiff will request leave of Court to amend her Complaint, not just to adapt to different rules of discovery and procedure, but also, now that the case is in federal court, to avail herself of remedies found in federal statutes such as TILA, RESPA, HOEPA, and even RICO and SEC rules and regulations, all of which Plaintiff contends Defendant has violated.

///

However, regarding the substance of Defendant's points in this claim, Plaintiff contends that Defendant is incorrect, and that Plaintiff was actually very specific in her Complaint regarding the listed elements which constitute fraud and misrepresentation, and those points were: (a) that the "mortgage loan" was in reality a disguised securities transaction; (b) that the appraisal was intentionally and fraudulently inflated without regard to true values of comparable properties (and that MortgageIT was a willing participant in this fraud); (c) that the reported Annual Percentage Rate of interest was underreported due to the omission of hidden costs, fees, insurance and other payments regarding the undisclosed securities transaction, and also due to the fraudulently inflated appraisal; (d) that Plaintiff's identification was used to create a vehicle for profit for the Defendants and for the undisclosed third parties, without the knowledge or permission of Plaintiff; (e) that, upon the sale of its interest in the note signed by Plaintiff, Defendant (having been paid in full) relinquished its authority to foreclose or collect payment; and (f) that Defendant MortgageIT may not have been the true source of the funds for the subject loan, but in fact, may have only "rented" its charter to unregistered and unlicensed third parties not authorized to make loans in Nevada.

As seen earlier, there is a preponderance of evidence which indicates that Defendant MortgageIT participated in several, if not all, of the above misrepresentations and fraudulently induced borrowers to sign on the dotted line in complete and total disregard to ethical business practices, as well as their customers' financial and personal well-being, and then followed up this fraud with the foreclosure and sale of perhaps thousands of homes for which they had no lawful authority to foreclose or sell, illegally and maliciously putting thousands of American families out on the street, just to satisfy what can only be described as an insatiable greed. When the documentation for the above claims is produced by the Defendant, or through forensic audit, Plaintiff's claims will be irrefutable.

Counsel for Defendant seems to be at a loss in attempting to show that Plaintiff does not "specifically" name the times, places, manner, content, etc. of the above misrepresentations, but the answer is so simple that their attempt to make an issue out of it is embarrassing and disingenuous. The time is the time around which the loan was signed (which

is also the "when"); the <u>place</u> is the place where the loan closing took place; the <u>substance</u> is through the representations made by Defendant in their documents which were later proved to be false and misleading; the <u>who</u> is the Defendant, etc.

Further, (1) the false representation is the fact that the transaction was purported to be a mortgage loan, when in fact, it was in reality a disguised securities transaction; (2) Defendant knew it would securitize the loan, but did not disclose this to Plaintiff; (3) Defendant did, in fact, securitize the loan, and never informed Plaintiff of this fact; (4) Plaintiff relied upon Defendant's representation that the transaction was a normal mortgage loan where her payments would go to the party who would apply them to her mortgage, when in fact, this was not the case; (5) the damages are the total amount of the financial transaction, plus whatever amount Defendant gained by profiting from the scheme as long as Plaintiff was unaware of it.

Plaintiff believes that she expressed these concerns adequately enough in her Complaint, and prays that the Court allow the case to proceed so that the truth may come forward. Plaintiff believes that the main reason Defendant wishes this case be made to go away is to keep the truth from being revealed. Therefore, in the interest of justice, this claim should not be dismissed.

### 5.    Civil Conspiracy

The issue of **securitization** of the Note, as alleged by Plaintiff, could not have been carried out by any one party, but in fact, was designed, planned, executed and completed by at least two parties working together in a civil conspiracy to their profit and to the detriment of borrowers like the Plaintiff, and eventually, also against the investors in the secondary market, many of whom are left holding the "worthless paper" these conspirators created.

As part and parcel of this civil conspiracy, MortgageIT allowed the undisclosed third parties to make enormous sums of unreported income, from which no taxes were paid, and from which Defendant profited, all to the damage of Plaintiff, who was never informed that her money would be used in such a fashion. Had Defendant MortgageIT disclosed this fact to Plaintiff prior to closing, not only would Plaintiff have declined to execute the loan Note, but he also would have reported this illegal activity to the appropriate authorities.

Plaintiff cannot determine, for example, the "formation" of the conspiracy, when Defendants such as MortgageIT will not simply divulge this information when asked. It should be enough to establish that MortgageIT was the "seller" of Plaintiff's note, and is certainly one of the parties who worked together whose wrongful acts included creating a new financial instrument, with terms, participating parties, and different payment streams than what was represented in the original mortgage loan, all of which was not disclosed to the Plaintiff.

Further, the only parties Plaintiff has "failed to identify" are the DOE defendants, whose identities are currently unknown, but whose activities were essential in this civil conspiracy to defraud this Plaintiff and many other borrowers. These unknown parties, possibly including the property appraisers, will be added as their true identities become known.

### 6. Rescission

Counsel for Defendant conveniently provides the "rescission" portion of RESPA which describes the three-day period, but falsely states that Plaintiff "fails to allege facts to show that her claim is excused from the three day limitation." Of course, Defendant mentions not one single word about the **securitization** of the Note that Plaintiff signed and which is part and parcel of that same transaction. Apparently, counsel would have us believe that the **securitization** of the borrower's note has become such a casual, expected part of what we consider a "residential mortgage transaction" that they need not even mention it.

Traditionally, a borrower would approach a lender for a loan, the lender would provide the funds, and that's where it would end. Under such "normal" conditions, the note would remain in the possession of the lender until it is paid off. Plaintiff contends that in this type of situation, there would scarcely ever be an instance where the original Promissory Note was "lost or destroyed" as is so often the case presently.

In today's more "modern" lending practices, borrowers have been convinced to accept the concept that it should be quite "normal" that all "residential mortgage loans" are sold off in pieces, sometimes repeatedly, whereby the lenders can make money selling the loan; then, continue to demand payment from the borrower for an obligation it no longer owns; then, illegally foreclose, sell, and take possession of the home it no longer has any interest in; and

then, go after the borrower for the "deficiency" in the "unpaid balance" of the note which it not only has no interest in any more, but was fraudulently inflated by unscrupulous appraisers as part of the whole scheme!   Plaintiff holds that this "windfall" which lenders such as MortgageIT attempt to get through fraud and misrepresentation must stop.

But besides the wrongful gains made by lenders in this way, the **securitization** process in fact reveals itself as being <u>more important</u> than the mortgage itself, based on the fact that Defendant MortgageIT proudly trumpeted its securitized loans, making this much more a <u>securities</u> transaction than a conventional residential mortgage loan.   The fact that Defendant had every intention of securitizing the loan made the "mortgage" portion of the transaction but one small step in a much larger sequence of steps necessary for completion of the securitization process.

Therefore, not only because this was indeed a securities transaction, in which Plaintiff's Note was the integral part and without which there is no transaction, but also, since investors may purchase interest-bearing certificates in the said security instrument from the point it was offered *up to the present date*, Plaintiff contends that the whole ordeal was, and is, <u>one single transaction</u>, still ongoing.   Therefore, the "three-day" right of rescission did not expire, nor was it waived at any time by the Plaintiff because, by the single transaction theory, <u>this "loan" transaction has never closed</u>.

Defendant asserts that Plaintiff never made a claim to rescind the said loan, but Plaintiff sent a Rescission Letter via Certified Mail to the servicer, IndyMac Bank.   Plaintiff contends that it was IndyMac's duty as servicer to forward the letter to the original lender.   However, as MortgageIT may not have been properly noticed of Plaintiff's intentions, Plaintiff also is sending a Rescission Letter to MortgageIT concurrently with the filing of this Opposition, and attaches said letter hereto as Exhibit "A."

Based on this, and other claims relevant thereto (such as Fraud), Plaintiff's claims for Rescission should not be dismissed as per Defendant's Motion presently before the Court.

### 7.   Wrongful Foreclosure

Counsel for Defendant again makes claims about "payments due" without providing the

necessary and full chain of transfers of interest in Plaintiff's Note.  If Defendant MortgageIT has been paid according to the sale of its interest in Plaintiff's Note, and if said interest has been transferred to the purchasers of certificates in the security instrument or instruments which contain(s) the Note, then only those holders may claim any amounts "due and owing." (Of course, those claims would be the subject of a different lawsuit, and any such claims are rejected by Plaintiff as being from parties with whom she did not contract.)

Without any party holding both the Note and the Mortgage together, no named defendant or other non-party defendant has the right to foreclose on the Plaintiff.  It is because of Defendant MortgageIT's securitization of Plaintiff's Note that the mortgage is irreparably separated from the Note.  Many cases have confirmed that the Note and Mortgage must both be presented to enforce and foreclose -- See *In re Foreclosure Cases*, 521 F. Supp. 2d 650, 653 (S.D. Oh. 2007), stating that, "[t]o show standing in a foreclosure action, . . . the [lender] plaintiff must show that it is the **holder of the note and the mortgage** at the time the complaint was filed;" and, *Carpenter v. Longan*, 83 U.S. 271, 274, 21 L. Ed. 313 (1872), stating that "[t]he note and mortgage are inseparable; the former as essential, the latter as an incident;" adding that "[a]n assignment of the note carries the mortgage with it, while an assignment of the latter alone is a nullity." Also see *In re Leisure Time Sports, Inc.*, 194 B.R. 859, 861 (9th Cir. 1996) where it was stated that "[a] security interest cannot exist, much less be transferred, independent from the obligation which it secures," and that, "[i]f the debt is not transferred, neither is the security interest;" and *Kelley v. Upshaw*, 39 Cal. 2d 179, 192, 246 P.2d 23 (1952), stating that "assigning only the deed without a transfer of the promissory note is completely ineffective."

It could be argued that, in an attempt to be in harmony with the above cited cases, upon the sale of the Note, the mortgage went with it, making the untold number of investors of shares of the security instrument the "holders in due course," but this argument fails, because (1) the investors were not the party who foreclosed and sold Plaintiff's home; (2) the security instrument is a "pool" containing many mortgage notes where the borrowers who make payments cover the deficiencies of borrowers who do not – therefore, there is no way to tell

which notes are "paid up," which are "paid off," and which are deficient; and (3) there are far too many investors with different terms, payment amounts, maturity dates, and number of shares, to ever think of them being able to come together as a foreclosing entity, therefore, any title to which these investors might claim to the properties secured by loans in these "pools" is hopelessly clouded.

Even though MortgageIT argues that it is not a party to the foreclosure as it has taken place, the acts of this "original" lender are the cause for Plaintiff's loan payments being misapplied by the current servicer, and the false "default" which has been claimed by the foreclosing parties and by MortgageIT; therefore, MortgageIT is at least partially responsible for the wrongful foreclosure which has occurred, and their attempt to dismiss this claim should be denied.

### 8.    Quiet Title

Defendant's counsel's cryptic misrepresentation of the transfer of title in the subject property or loan is a perfect example of why Plaintiff believes she is the only party who has a clear and definable interest in the title to her property.  On the one hand, they state that "MortgageIT transferred the loan to MERS" (Motion to Dismiss, p. 16), while later in the same Motion, they also say "MortgageIT transferred the loan to Indymac Bank" (Motion, p. 23). Plaintiff is unsure as to how this is possible, but asserts that it is statements like this that lead to the confusion which lenders such as MortgageIT hope prevail in instances like this one. Plaintiff, conversely, wishes nothing more than the truth to come out regarding who transferred what to whom, and when.

Other than entering the mortgage transaction with good faith and clean hands, making her payments regularly for years, including making timely payments for years prior to this re-finance loan from MortgageIT, and then discovering she had been defrauded by all the parties who participated in the disguised securities scheme whereby Plaintiff's payments were promised to undisclosed parties that had nothing to do with her mortgage, whereupon she filed the instant lawsuit, Plaintiff can do nothing more to prove her good title in the property. Plaintiff contends that, even if she were still "current" on the "scheduled" payments, these

payments mean nothing towards paying off her mortgage, which was already paid off at the moment MortgageIT securitized the loan and sold its interest in it. Any claim by any defendant, including MortgageIT, that Plaintiff is in "default" should be subject to an accounting through the discovery process which simply "follows the money" right to the investors' pockets, whereupon the party making the claim of "default" could then attempt to explain how the Plaintiff could possibly be "in default" to parties with whom she never agreed to make payments to, nor could pay off her mortgage even if she did.

As mentioned earlier, Plaintiff contends that there is no default, nor can there by, since MortgageIT has securitized the loan and the mortgage has been paid in full as a result, possibly multiple times over. Defendant has not proven otherwise simply on the statements – or omissions – of its counsel.

Additionally, as mentioned earlier, Plaintiff asserts that the only possible "holders in due course" to the Note would be the <u>investors</u> who bought portions of the investment securities that contained the interest in the Note. However, due to the nature of the Note possibly being "tranched" or portioned into more than one security instrument, and the fact that numerous, possibly hundreds or even thousands, of investors bought certificates, or "pieces" of the instruments, it is therefore impossible to tell who the "holder in due course" could be, and therefore the title is hopelessly clouded as a result.

The only way to prove whose claims are valid would be to produce the full and complete chain of title and all transfers and/or assignments of the interest in the Note. Assuming MortgageIT will continue to refuse to supply such information in the normal course of events, Plaintiff with either move to compel, or have a forensic audit performed of Plaintiff's loan and note to reveal the entire securitization trail.

Based on the fact that, as demonstrated above, Plaintiff is the only party who entered the transaction with clean hands and good faith, and is the only party with a clear and definable interest in the property, Plaintiff's claim for Quiet Title has merit and should not be dismissed, certainly not as based upon on the misrepresentations and intentional omissions of counsel for Defendant MortgageIT.

### 9.   Injunctive Relief

Since MortgageIT has effectively separated the mortgage from the Note, Plaintiff has sought to put a stop to any party's attempt to illegally demand payment for a mortgage which was paid in full, or foreclose and even sell her property in which it no longer had any legal interest.   Unfortunately, some parties have worked together to foreclose and sell Plaintiff's home, even after they knew there was a lawsuit pending which raised issues of title and ownership of the subject property, and even after they were served as defendants in the said lawsuit!

No harm at all would have come to any of the parties had they simply let the lawsuit proceed and the chips fall where they may.   But in a shocking act of egregious behavior, these parties have thumbed their noses at justice as well as shown a complete and total disrespect for the fraudulent transfer and conveyance laws which have been on the books for years, in their blatant attempt to irreparably harm Plaintiff with a willful, wanton and malicious act of vengeance.   Plaintiff contends that these foreclosing entities have operated in the darkness of the "non-judicial" process for too long.

Injunctive Relief is proper in the instant case.   Plaintiff contends that the foreclosing defendants had no lawful authority to enforce the Note or to foreclose and sell Plaintiff's house, since none of them possessed the Note and the Mortgage together at the time of foreclosure, nor do any possess both currently.

Though Defendant MortgageIT would like to be dismissed from this claim, it is MortgageIT's securitization of the Note that has given rise to the unlawful foreclosure, and they should be enjoined the same as any other defendant who has acted in contravention of the law in this matter.   In fact, due to MortgageIT's claims of having transferred the note to multiple parties, and due to the fact that the mortgage may not have ever been transferred, MortgageIT must be enjoined to prevent any future wrongful claims they may make against this Plaintiff.

/ / /

/ / /

## **CONCLUSION**

Defendant MortgageIT cannot avoid its obligation to <u>prove</u> it did not play a complicit role in all the above claims for relief by its act of **securitizing** Plaintiff's Note. Counsel for Defendant has <u>completely ignored</u> the significance of this point. In the securitization process, <u>Defendant transferred all of its interest in the Note</u>, possibly multiple times; has been paid in full on Plaintiff's mortgage; and has started a chain of events leading to a hopelessly clouded title and a host of parties who have no authority to lawfully collect, foreclose, or sell the said property, but have done so anyway, and have committed a fraud upon Plaintiff and upon this Court.

MortgageIT's involvement is apparent in all of Plaintiff's claims, and therefore, Defendant's Motion to Dismiss should be denied in its entirety.

Dated this 29th day of September, 2009.

Heidi Duffy, Plaintiff in proper person
213 Night Fall Terrace
Henderson, Nevada 89015
(702) 768-3101

## CERTIFICATE OF SERVICE

I hereby certify that service of the foregoing **OPPOSITION TO DEFENDANT MORTGAGEIT'S MOTION TO DISMISS** was made on the 29th day of September, 2009, by depositing a copy for mailing, first class mail, postage prepaid, at Las Vegas, Nevada, and addressed as follows:

Mark G. Tratos
F. Christopher Austin
Laraine M. I. Burrell
**GREENBURG TRAURIG, LLP**
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
*Counsel for Defendant MORTGAGEIT, INC.*

Kevin Hahn
**MALCOLM ♦ CISNEROS**
2112 Business Center Drive
Second Floor
Irvine, CA 92612
*Counsel for Defendants OneWest Bank and Trustee Corps*

# EXHIBIT "A"

**Heidi Duffy**
*213 Nightfall Terrace*
*Henderson, NV 89015*
*(702) 768-3101*

_____

29 September 2009                    Certified Mail Number **7008 3230 0000 4577 7500**

TO:    MortgageIT, Inc.
         33 Maiden Lane
         New York, NY 10038

**REFERENCE:**
         **BORROWER: Heidi Duffy**
         **PROPERTY ADDRESS: 214 Nightfall Terrace, Henderson, Nevada 89015**
         **APN NUMBER: 179-09-316-029**
         **TITLE ORDER NUMBER: 090335487**
         **MortgageIT LOAN NUMBER: 40680246; CLOSING DATE: 11 Oct 2006**

RE:    **RESCISSION OF LOAN**

Dear Sir/Madame:

Please be advised that, based upon information regarding the above-referenced mortgage loan, I believe there are claims against you and your company for negligence, breach of contract, and breach of fiduciary duty, along with other claims in law and equity which total more in financial damages than the client's equity (down payment), costs of closing, all points and interest paid to date plus the par value of the subject mortgage note.

This is a substantial claim that may exceed the policy limits on any and all insurance policies issued that cover the risks in this claim. Therefore, **please forward a copy of this letter to any company that has issued a policy of insurance covering errors, omissions, negligence or any other guarantee or indemnification relative to the above-referenced loan "closing." Failure to notify your insurance carrier may result in denial of coverage or denial of the duty to defend.**

The above-referenced loan closing involved conflicting documentation and failure to disclose the existence and true terms of a Pooling and Service Agreement and Assignment and Assumption Agreement that predated the loan closing and provided for fees, profits and payments that were never intended to be disclosed to me (as the borrower and signer of the promissory note), and that were withheld from me before, during and after the subject loan closing. It was not until exhaustive research was performed that the true facts are emerging, and which have caused me to express an **immediate need and desire to rescind the alleged subject loan transaction.**

Based upon my research of news articles, court documents, and printed and recorded interviews with people who have knowledge of the practices and policies inherent in transactions of this nature, it is apparent that, contrary to federal and state law, you have participated in an extended pattern of conduct to further, foster, allow and promote an interstate conspiracy to deceive and defraud large groups of persons targeted as prospective borrowers in the United States, which includes me, and were further negligent in your supervision of your officers, directors, agents, affiliates, vendors and employees resulting in my suffering substantial financial and other injuries.

Further, I believe that since you, your insurance carriers, your agents, servants, vendors and employees must have known all or enough of the facts to know that I was not receiving the guidance, protection, due diligence or information to which I was entitled. Had I been apprised of the true facts, I would not have executed the papers that were presented as ordinary mortgage loan documents but which were, in fact, part of an elaborate scheme for the execution of documents purporting to be loan documents but actually resulted in the issuance of a negotiable instrument with the intent on your part, but undisclosed and unknown to me, to change the terms and conditions of payment of the mortgage note from its stated terms, pay fees and profits to a variety of undisclosed third parties who were participating in the fraudulent sale of unregulated securities which purported to be backed by the mortgage note which I signed, and that appear to have misled investors into believing that the certificates they purchased were also backed by the property secured by the mortgage note bearing my signature.

Additionally, in light of ongoing newly-revealed information regarding appraisal fraud as being an important aspect and necessary part of the scheme, I believe that the appraised value used in the loan closing was not computed in accordance with industry guidelines for using comparable time frames and geography and other indicia of probable value.  The value reported to me by the Lender and the Lender's appraiser was intentionally or negligently tied to the contract price and was significantly higher than the real fair market value at that time. This disparity since has been easily corroborated by current values in the area, to wit: concurrent with the collapse of your scheme, the values of the real property purchased by myself and countless others have declined back to the levels that existed before this scheme was initiated.

This indicates a high probability that the appraisal review required of the nominal lender was omitted and/or intentionally terminated. It also indicates that the cost of the loan was significantly higher that what was reported on the GFE and other disclosure documents at the time of closing.  It is my contention that, since larger loans provided larger mortgage-backed securities, you willingly participated in a fraud whereby you could increase profits by neglecting your legal duties and showing careless disregard for the financial well-being of the borrowers you serviced, myself included.

Further, it is apparent that you were aware and participated in the deception by which I was led to believe that the nominal lender was the actual lender, when in reality the nominal lender was "renting" its registration and charter to third parties who were neither chartered financial institutions nor registered business entities in the state in which the

property was located.  I contend that you had full knowledge that the alleged "loan" closing was a sham through which unregulated, unregistered and unchartered people and businesses engaged in banking and lending contrary to federal and state law.

The standard procedure used in these "securitized" mortgage loans is that the "loan" was table funded and that the nominal lender was in fact merely a stand-in for a series of parties who were not disclosed as the source of the funds, not disclosed as the recipient of fees (including the nominal lender who may have received a fee of 2.5% of the par value of the mortgage note), and not disclosed as the actual lender in the subject loan transaction.  While all of the participants at the "loan" closing were aware of these facts, I was conveniently – but illegally – kept in the dark.  As a result, I was never notified regarding the identity, authority, regulation, charter, or registration of the actual lender.

By keeping me in the dark about all of these elements of the fraud, you have taken my personal, sensitive information regarding my work history, social security number, financial data, etc. and used all of it without my permission to generate profits for yourself and your company.  I believe this is defined as identity theft.

Altogether, the deceptive lending practices, lack of full disclosure, appraisal fraud, and lack of due diligence on the part of the lender concerning affordability and tangible benefits, created a condition wherein the true term of the loan was significantly overstated, making it highly likely that the loan would go into default at a time much earlier than the expressed term of the mortgage note.  Reducing the term of the loan to the time of expected default and adding the inflated appraisal resulted in an APR significantly exceeding the legal interest limit under state law.  These were facts known by every participant at the loan closing except me, and such practices violate applicable laws on usury entitling me to nullification of the note, extinguishment of the mortgage, treble damages and attorney fees (if needed), in addition to the refund of all payments made, and other rebates and damages suffered.

Most importantly, it cannot be determined from the filings of the parties, nor the notices sent to me as borrower, who is the current actual holder in due course, who is entitled to payment under the mortgage note, whether additional third party payments were made from insurance products that are reported to have guaranteed either the payments or the principal of the mortgage note, or whether in fact the mortgage note has been prepaid, overpaid, or any balance is owed and if so, to whom. This prevents me from notifying the true source of funds (the actual lender) of my intent to rescind. It is my determination, based upon these facts, that the loan closing was never completed and that therefore the 3 day right of rescission was neither waived nor did it expire. **Under the Federal Truth in Lending Act the appropriate party must either comply with the rescission or file a declaratory action seeking to avoid the rescission.**

In order for any institution to proceed with a foreclosure or trustee's sale/purchase of deed, **the original note must be produced**.  It would seem obvious that, if indeed my mortgage was pooled with many others and sold as a separate instrument, you cannot

both claim to have the original note and claim to have transferred it.  Also, if the pooled asset was sold by you to other parties, which may have included insurance guaranteeing payment, then you have already been paid in full and no longer have any right to foreclose, demand payment, take physical possession of the property, or attempt to collect any other debt attached to the note and mortgage.  I consider any of these actions by you to be an abuse of process and a violation of law, and <u>I herewith demand that you cease and desist in all such actions</u>.

Attached is a copy of a Disclosure and Notice of Non-Compliance I have filed at the County Recorder for Clark County, Nevada.  I have served the Trustee and all potential buyers of the deed at the scheduled Trustee's sale to inform them of your violations.  Additionally, as you already know, I have filed an action against you for Fraud, Misrepresentation, Negligence, and other claims, based on some or all of the facts mentioned herein, and, by virtue of your having the case removed to federal court, I may amend my Complaint to include other claims as they are discovered.   My Lis Pendens has also been lawfully recorded.

In the mean time, under separate cover, I will be sending you my Qualified Written Request under Section 6 of the Real Estate Settlement Procedures Act (RESPA) to get specific answers to my concerns, as well as conducting discovery under the normal process of the lawsuit.

Therefore, based on all the foregoing, please respond to the issues presented in this letter within ten (10) days of its receipt.  Your failure to respond within the ten-day period will be deemed as a failure and/or refusal to comply with the rescission of the loan as stated in this letter, which will be included as documentary evidence in the case file as the process moves forward toward a resolve of my increasing and continuing damages.

PLEASE GOVERN YOURSELVES ACCORDINGLY.

Sincerely,

Heidi Duffy

Attachment:  Disclosure and Notice of Non-Compliance